FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

In re:

Whittaker, Clark, & Daniels, et al.

     Debtors.

Whittaker, Clark & Daniels, Inc. et al.,

     Plaintiffs,

  v.

Brenntag AG, et al.,

     Defendants.

Case No. 23-13575 (MBK)

Chapter 11

Adv. Pro. No. 23-01245 (MBK)

Hearing Date:  December 5, 2023

*All Counsel of Record*

## MEMORANDUM DECISION

This matter comes before the Court by way of a Motion (the "Motion," ECF No. 3[1]) filed by Whittaker, Clark & Daniels, Inc. and its affiliates ("Debtors") in Adv. Pro. No. 23-01245, seeking summary judgment in their favor with respect to Counts I and IV of the Complaint. Specifically, Debtors seek a determination that certain claims brought by third parties against non-debtors in outside litigation ("Successor Liability Claims"), as defined in the Complaint, are property of the Debtors' estates.  The Orange County Water District ("OCWD") and the Official

---

[1] Unless otherwise specified, all ECF Nos. will refer to docket entries in the instant adversary proceeding, Adv. Pro. No. 23-01245.

Committee of Talc Claimants (the "Committee" or " Talc Committee") oppose Debtors' motion (ECF Nos. 86 & 90, respectively).  The Debtors filed replies to the Talc Committee's and OCWD's opposition (ECF Nos. 99 & 100, respectively).  Additionally, the future claimants' representative ("FCR")—appointed by the Court to serve as legal representative to represent and protect the rights of future claimants—filed a statement to apprise the Court of her views on the Motion.[2]  The Court has fully considered the parties' submissions, as well as the arguments, evidence and testimony presented during the hearing on December 5, 2023.  For the reasons set forth below, the Court grants the Debtor's motion for summary judgement on Counts I and IV.

## I.    Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court.  As explained in detail below, this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409.

---

[2] The FCR has not moved to intervene in the adversary proceeding.

## II.      Background and Procedural History

The factual and procedural history of this case is well known to the parties and will not be repeated in detail here.  In relevant part, Debtors filed for chapter 11 bankruptcy to address and resolve existing and future claims alleging injuries from exposure to products containing talc, asbestos, or chemical compounds processed or distributed by the Debtors or their predecessors in interest.  The claims against the Debtors fall into two general categories: (1) claims alleging injuries resulting from exposure to products containing talc, asbestos, or chemical compounds processed or distributed by the Debtors or their predecessors in interest (the "Asbestos Claims," and such claimants, the "Asbestos Claimants"); and (2) environmental litigation claims against the Debtors relating to the production or handling of hazardous materials which allegedly contaminated certain properties (the "Environmental Claims," and such claimants, the "Environmental Claimants"). *See Complaint* ¶ 1, ECF No. 1.  As a result of this litigation, Debtors are currently defendants in lawsuits across more than 30 different jurisdictions.  Much of the litigation also includes claims against Brenntag North America and its related entities ("Brenntag") who, in 2004, purchased substantially all the Debtors' operating assets, including indemnification rights against certain Debtors.  In addition to purchasing all the Debtors' operating assets, Brenntag also assumed certain non-asbestos and non-environmental liabilities related to the transferred assets. *See First Day Decl. of Moshin Y. Meghji* ¶ 21, ECF No. 5 in Case No. 23-13575.

After filing their chapter 11 petition, Debtors commenced the instant adversary proceeding to address the Environmental and Asbestos Claims (collectively, the "Tort Claims").  Debtors contend that the Tort Claims involve actions against certain non-debtor entities—like Brenntag—

and seek to establish such entities' liability for Tort Claims on any grounds, including, without limitation, that such entities are successors to, or alter egos of, the Debtors. *Complaint* ¶ 1, ECF No. 1. These are the "Successor Liability Claims." Debtors submit that such Tort Claims, pursued as part of the Successor Liability Claims litigation, give rise to possible indemnification or contribution claims against the Debtors. By way of the adversary proceeding, Debtors seek a determination as to whether the Successor Liability Claims are property of the Debtors' estates, to be pursued by estate fiduciaries on behalf of all creditors. Debtors also ask the Court to determine whether such claims are subject to the automatic stay. In other words, they seek a permanent pause in the litigations that they assert involve estate assets, or so directly impact the estate that they should be protected by the automatic stay. Debtors filed their Summary Judgment Motion seeking such relief on September 8, 2023—one day after the Adversary Complaint was filed.

Shortly thereafter, the Court entered a Case Management Order ("CMO", ECF No. 52), which limited the Motion to Counts I and IV[3], and mostly stayed discovery in this Adversary Proceeding pending a determination on the Summary Judgment Motion, which was scheduled for argument on December 5, 2024. The CMO also directed the parties to engage in good faith settlement discussions through mediation. On November 15, 2023, the Court entered an order appointing the Honorable Robert E. Gerber (Ret.) as Mediator (ECF No. 72). Shortly before the hearing on the Motion, Debtors filed a separate motion seeking entry of an Order: (I) Temporarily

---

[3] Pertinently, in Count I of the Complaint, Debtors seek a declaration by the Court that the commencement of, continuation of, or settlement of Successor Liability Claims violates the automatic stay imposed by 11 U.S.C. § 362(a)(3). Similarly, in Count IV of the Complaint, Debtors seek declaratory relief resolving that the Successor Liability Claims are property of the applicable Debtors' bankruptcy estate pursuant to 11 U.S.C. § 541(a). *See Complaint*, ECF No. 1.

4

Enjoining Certain Actions Against Non-Debtors; and (II) Approving Procedures for Seeking Extensions of Temporary Restraining Order (the "TRO Motion").  The Court granted the TRO Motion in part and enjoined certain actions on a temporary basis.  Following oral argument, the Court indicated that it would reserve its decision on the Motion until at least January 31, 2024, pending the outcome of mediation.

The parties have engaged in mediation, and, on consent of all mediation parties, the Court has entered three (3) separate Agreed Orders Regarding Mediation Stipulation (ECF Nos. 137, 148, and ECF No. 1059 in the main bankruptcy case, Case No. 23-13575).  Each Stipulation requests that the Court further defer a ruling on the Motion to allow the parties more time to mediate.  The most recent Stipulation—entered on May 14, 2024—deferred the Court's ruling through Monday, June 10, 2024.  Finally, on June 2, 2024, Debtors submitted a letter (ECF No. 214) requesting issuance of a decision on the Summary Judgment Motion.  As the Court prepared to issue its decision, it received additional correspondence; including a Notice of Additional Facts and Letter submitted by the Official Committee of Talc Claimants (ECF No. 215) suggesting the Court should decline to decide the Summary Judgment Motion; and a letter from the Future Claimants Representative (ECF No. 1114 in Case No. 23-13575) likewise urging the Court to decline the Debtors' request to decide the Summary Judgment Motion.  During a hearing on June 17, 2024, the Court explained its basis for concluding that a ruling on the Summary Judgment Motion was appropriate at this juncture.  The Court also requested supplemental briefing from the parties, discussed *infra*.  Briefing is now complete, and the Court issues its ruling by way of this

Opinion and accompanying Order.  For the reasons set forth below, the Court concludes that all

Successor Liability Claims are estate property.

### III.    Standard of Review

#### A.  Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a).  As the Supreme Court has indicated, "[s]ummary judgment procedure is properly

regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as

a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every

action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)

(citing FED. R. CIV. P. 1).  "In deciding a motion for summary judgment, the judge's function is to

determine if there is a genuine issue for trial." *Josey v. John R. Hollingsworth Corp.,* 996 F.2d

632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine

dispute of material fact. *Huang v. BP Amoco Corp.,* 271 F.3d 560, 564 (3d Cir. 2001) (citing

*Celotex Corp.,* 477 U.S. at 323, 106 S. Ct. 2548).  In determining whether a factual dispute

warranting trial exists, the court must view the record evidence and the summary judgment

submissions in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  Disputed material facts are those "that

might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S. Ct. 2505. A

dispute is genuine when it is "triable," that is, when reasonable minds could disagree on the result.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)); *see also In re Moran-Hernandez*, 544 B.R. 796, 800 (Bankr. D.N.J. 2016) (quoting *Matsushita,* 475 U.S. at 586, 106 S. Ct. 1348) ("Once the moving party establishes the absence of a genuine dispute of material fact, however, the burden shifts to the non-moving party to 'do more than simply show that there is some metaphysical doubt as to the material facts.'"). A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. FED. R. CIV. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"); *see also Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996); *Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. *Liberty Lobby, Inc.,* 477 U.S. at 249–250, 106 S. Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S. Ct. 1348.

### B. Property of the Bankruptcy Estate

"After a company files for bankruptcy, 'creditors lack standing to assert claims that are property of the estate.'" *In re Emoral, Inc*., 740 F.3d 875, 879 (3d Cir. 2014) (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc*., 296 F.3d 164, 169 (3d Cir. 2002)) (other citations omitted).  In determining what constitutes a debtor's property, courts look to § 541, which broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  Causes of action can be property of the estate if certain criteria are satisfied.

With respect to the underlying type of cause of action at issue here—Tort Claims asserted against a third-party non-debtor corporation stemming from the alleged wrongful conduct of a debtor corporation—the seminal case in the Third Circuit is *In re Emoral, Inc.*, 740 F.3d 875 (3d 2014).[4]  In that case, the trustee had settled claims described as "belonging to the estate" with the debtors' successor, Aaroma Holdings LLC ("Aaroma").   When plaintiffs filed individual complaints against Aaroma in the state court, Aaroma sought a ruling from the bankruptcy court that those claims, in fact, belonged to the estate and had already been resolved.  The court in *Emoral*, thus, had to decide whether claims by creditors against a non-debtor third-party based on a "mere continuation" theory[5] of successor liability under state law were property of the estate.

---

[4] The Committee asserts that *Emoral* was wrongly decided and should be reconsidered. *See Committee's Opp'n* ¶ 47, ECF No. 90.  However, as the Committee acknowledges, "*Emoral* is binding authority, and the Court is required to follow it." *Id.*

[5] Generally, under the "mere continuation" theory of successor liability, plaintiffs seek to impose liability upon a successor company for the predecessor's debt and liabilities where it can be established that the successor entity is merely a continuation of the predecessor. *See Lefever v. K.P. Hovnanian Enterprises, Inc.*, 160 N.J. 307, 734 A.2d 290 (1999).

The Third Circuit observed that the facts giving rise to the cause of action were not specific to the plaintiffs, but common to all creditors.  The circuit court additionally noted that successful claims against Aaroma would benefit all creditors.  Ultimately, Aaroma had not committed directly any wrongs against the plaintiffs, individually.  Instead, its liability arose solely due to its relationship with the actual wrongdoer, the debtor.  Accordingly, the Third Circuit concluded that plaintiffs' claims constituted estate property and were properly pursued by the trustee on behalf of all creditors—not the individual plaintiffs. *See id.* at 880.

The *Emoral* decision has been interpreted as establishing a two-prong test.  To  be estate property: "(1) the claim must be one that both existed at the commencement of the filing and that the trustee could have asserted on his own behalf under applicable state law; *and* (2) the claim must be a general one, with no particularized injury arising from it." *In re Maxus Energy Corp.*, 571 B.R. 650, 658 (Bankr. D. Del. 2017) (citing *In re Emoral*, 740 F.3d at 879); *see also Foodtown*, 296 F.3d at 169 n. 5; *id.* at 170.  "The first element is about timing." *In re Wilton Armetale*, 968 F.3d 273,282 (3d. 2020). There is no dispute here that the Successor Liability Claims existed as of the Debtors' petition filings. "The second element hinges on whether the claim is 'general' to the estate or 'personal' to a specific creditor" because "[i]ndividual creditors have the statutory authority to bring only personal claims." *Wilton Armetale*, 968 F.3d at 282 (citing *Emoral*, 740 F.3d at 879).  A claim is personal to a creditor and not property of the estate "[o]nly when a particular creditor suffers a direct, particularized injury that can be 'directly traced' to the defendant's conduct." *Id.*

9

In *Emoral*, the Third Circuit deliberately distinguished between plaintiffs' personal injury claims against the debtor, which were individual to them, and their successor liability claims against the purchaser of the debtor's assets, whom plaintiffs were seeking to hold indirectly liable for the debtor's tortious conduct on a theory that the successor was a "mere continuation" of the debtor. *In re Emoral*, 740 F.3d at 879. The court examined the standard for establishing successor liability based on a mere continuation theory under applicable state law[6] and determined that the factual allegations needed to establish successor liability were general to creditors. *Id.* at 880. The court stated:

> To establish liability based on a "mere continuation" theory . . . a plaintiff must establish that there is continuity in management, shareholders, personnel, physical location, assets, and general business operation between selling and purchasing corporations following the asset acquisition.
>
> The [] Plaintiffs fail to demonstrate how any of the factual allegations that would establish their cause of action based on successor liability are unique to them as compared to other creditors of [debtor]. Likewise, they fail to demonstrate how recovery on their successor liability cause of action would not benefit all creditors of [debtor] given that [successor], as a mere continuation of [debtor], would succeed to all of [debtor's] liabilities. Thus, the [] Plaintiffs' cause of action against [successor] is "general" rather than "individualized."

*In re Emoral*, 740 F.3d at 879-80 (quotations and citations omitted).

As discussed, the claims at issue in *Emoral* were based on a "mere continuation" theory of successor liability, whereas many of the Successor Liability Claims at issue in the instant case are

---

[6] The parties in *Emoral* agreed that either New Jersey or New York law applied to the court's property of the estate analysis, which the Third Circuit determined were identical for that purpose. *In re Emoral*, 740 F.3d at 879, n.2.

bottomed on additional theories—including a "product line exception" theory.[7]  Nevertheless, this Court finds the *Emoral* decision instructive[8] and does not view its holding as limited to successor liability claims premised only on a single theory of liability. Indeed, the Third Circuit and other courts have applied *Emoral* to a host of other types of claims.[9]

## IV.    Discussion

While the parties agree that *Emoral* provides guidance, they disagree as to its scope and application.  Debtors assert that, under *Emoral*, the Successor Liability Claims are property of the bankruptcy estate and, summary judgment is appropriate as to Counts I and IV of the Complaint. Debtors contend that all the potential Successor Liability Claims are general to the bankruptcy estate because such theories of liability are rooted in the corporate and contractual relationship between the Debtor and certain non-debtor third parties (identified as "Protected Parties" in the Complaint), and thus do not depend upon any facts that are unique to any particular Tort Claimant or creditor. "Successor Liability Claims – whether premised on a theory of mere continuation, *de facto* merger, product line, alter ego, or any other theory of indirect liability – cannot be 'personal'

---

[7] New Jersey—along with several other jurisdictions—has adopted a product line exception under which, by purchasing a substantial part of a manufacturer's assets and continuing to market the goods in the same product line, a corporation may be exposed to tort liability for defects in the predecessor's products. *See Lefever,* 160 N.J. 307.

[8] As noted, the Committee asserts that *Emoral* was wrongly decided and should be reconsidered by the Third Circuit. *See Committee's Opp'n* ¶¶ 47-48, ECF No. 90.  As this Court is bound by Third Circuit precedent, this argument does not warrant further discussion.

[9] *See, e.g., Wilton Armetale*, 968 F.3d at 278 (applying *Emoral* to breach of fiduciary duty and fraudulent transfer claims and determining such claims were property of the estate); *In re Tronox, Inc.* 855 F.3d 84, 105 (2d Cir. 2017) (applying *Emoral* to indirect-liability claims seeking to hold debtor's alleged successor and alter ego liable for torts of its former indirect subsidiaries and finding that such claims were property of the estate); *In re Mee Apparel, LLC*, 2016 WL 3535805, at *7 (D.N.J. June 28, 2016) (applying *Emoral* to alter ego claims and holding that such claims were property of the estate).

11

to Tort Claimants because they do not seek to redress injury that such claimants can trace directly

to Brenntag . . . ." *Debtor's Supp. Br.* ¶ 1, ECF No 233.

The Committee, on the other hand, argues that Debtors "mischaracterize" the ruling in

*Emoral*, and suggest that its holding "is limited to 'mere continuation' claims under New Jersey

law." *Committee's Opp'n* ¶ 38, ECF No. 90 (quoting *Emoral*, 740 F.3d at 876). While the

Committee grants that claims like those pursued in *Emoral* are property of the estate pursuant to

§ 541(a), the Committee maintains that Debtors wrongly seek to expand the Third Circuit's holding

in *Emoral* to the "product line exception" to successor liability—something that was not addressed

in *Emoral*.  In the Committee's view, the Successor Liability Claims fail *Emoral's* two-prong test.

First, the Committee submits that a product line claim "cannot be asserted by a corporation against

its own successor" so it did not exist under state law at the time of the filing. *Committee's Opp'n*

¶ 45.  Specifically, the Committee contends that Debtors are precluded by California law from

bringing successor liability claims against Brenntag (the "California Claims").  Certain states,

including California, "[d]o not recognize any general substantive alter ego claim or cause of action

that can be asserted by a corporation on behalf of all creditors" *Id.* at  ¶¶ 66-68. Because Debtors

could not assert these claims under applicable state law, the Committee reasons that the California

Claims fail the first prong under *Emoral*.  Next, the Committee asserts that a product line claim is

particularized—not general—and, as a result, these claims likewise fail *Emoral's* second prong.

*Id.* at ¶ 44.  Thus, the Committee asserts that not all Successor Liability Claims, in fact, are estate

property.  Finally, the Committee argues that Debtors failed to establish the absence of material

facts; therefore, Debtors are not entitled to summary judgment on this record.

Additionally, after inquiry by this Court, Debtors have supplemented their position by submitting that § 544(a)(1) provides an alternative basis to support the Debtors' efforts to pursue Successor Liability Claims, inasmuch as (i) any hypothetical creditor could bring successor claims based upon traditional theories under applicable state law and (ii) successor claims premised upon the product line theory "factually overlap with, and seek to remedy the same harm as, all other successor claims." *Debtors' Supp. Br.* ¶ 2, ECF No 233.  The Committee and FCR have challenged this alternative reasoning and application of § 544(a)(1), on textual, historical, and policy bases.

The Court firmly believes that the Debtors offer the correct application of *Emoral* to the present dispute. Here, as in *Emoral*, the Successor Liability Claims are general to the Debtors' estates by their very nature, as they seek to hold non-debtor entities indirectly liable for the Debtors' tort liabilities, rather than remedy a harm that a Tort Claimant or creditor can directly trace to a non-debtor third party. *See MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 40 Misc. 3d 643, 677, 965 N.Y.S.2d 284, 311 (Sup. Ct. 2013) ("[T]he successor liability doctrine generally [does] not focus on the conduct of the third-party bringing the successor liability claim. The focus instead is on the relationship between asset buyer and seller and the buyer's post-acquisition conduct with respect to the assets.").  There can be little dispute that the bulk of such claims fall within the parameters of estate property under § 541(a)(1).  The more challenging inquiry, by far, is whether such claims not expressly considered in *Emoral* can or should be seen through the same lens.

In answering the inquiry in the affirmative, the Court takes a step back and observes that the issue at the heart of this dispute is whether the Successor Liability Claims constitute estate

13

property as defined under the Bankruptcy Code.  The parties—like the Third Circuit in *Emoral*—focus on whether the Successor Liability Claims are estate property under § 541(a)**(1)**, which broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  However, property of the estate also encompasses interests defined in § 541(a)**(7)** of the Code, which includes "[a]ny interest in property that the *estate* acquires after the commencement of the case." 11 U.S.C. § 541(a)(7) (emphasis added).

Notably, property of the **estate** is different from property of the **debtor**. *See, e.g.*, *In re Cybergenics Corp.*, 226 F.3d 237, 246 (3d Cir. 2000) ("'[Debtor's] assets' and 'property of the estate' have different meanings[.]").  The bankruptcy court in *Doemling*—a case that has been cited with approval by the Third Circuit—explained that "section 541(a)(7) . . . is limited to property acquired post-petition by the *estate* as opposed to property acquired by the *debtors*." *In re Doemling*, 127 B.R. 954, 956 (W.D. Pa. 1991).  Significantly, the rights and powers acquired by the estate by virtue of a Bankruptcy Code provision, such as § 544, may also constitute property of the bankruptcy estate.[10] *See, e.g.*, *In re Murray Metallurgical Coal Holdings, LLC*, 623 B.R. 444, 512 (Bankr. S.D. Ohio 2021) (collecting cases) ("[J]ust as prepetition claims are property of the estate under § 541(a)(1), post-petition claims are property of the Chapter 11 estate under § 541(a)(7).")*; In re Guillot*, 250 B.R. 570, 598 (Bankr. M.D. La. 2000) ("[W]e conclude that §

---

[10] For instance, in analyzing § 547, another code section offering a trustee an additional avoidance power, the overwhelming majority of courts have concluded that "preference actions qualify as property of the estate under § 541(a)(7)." *Matter of S. Coast Supply Co*., 91 F.4th 376, 382 (5th Cir. 2024) (collecting cases); *see also In re Simply Essentials, LLC*, 78 F.4th 1006, 1009 (8th Cir. 2023) (stating that "avoidance actions clearly qualify as property of the estate under subsection (7) [of § 541(a)]").

544(a), through its creation of the 'rights and powers,' creates estate property as of the commencement of the case, to the extent applicable non-bankruptcy law would provide property interests to the hypothetical ideal lien creditor.").[11]  In sum, to the extent the Debtors here possess the right and capacity to pursue recoveries, post-petition, under other Bankruptcy Code provisions, such as § 544(a), these claims constitute estate assets to be litigated, settled or otherwise resolved by estate fiduciaries, subject to court-approval after notice and a hearing.

### A.  11 U.S.C. § 544(a)(1)

Section 544 of the Code addresses a trustee's rights and powers, and ability to employ the rights and remedies of certain hypothetical creditors.  In relevant part, § 544(a)(1) provides:

> A trustee shall have . . . the rights and powers of . . . a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

11 U.S.C. § 544(a)(1).

Where a trustee has not been appointed, a debtor in possession may exercise these powers. *See In re Wright*, 649 B.R. 625, 628 (Bankr. D.N.J. 2023) (explaining that Congress has explicitly provided for chapter 11 debtors-in-possession to have all the powers of a trustee, including avoiding powers); *see also In re Cybergenics Corp.*, 226 F.3d at 244 ("the [chapter 11] debtor in possession is similarly endowed to bring certain [fraudulent transfer] claims on behalf of, and for the benefit of, all creditors.").  Thus, as the result of its chapter 11 filing, Debtors possess the rights

---

[11] Numerous courts have held that sections 541(a) and 544(a) are not mutually exclusive. *See, e.g.*, *In re MS55, Inc.*, 2007 WL 2669150, at *11 (D. Colo. Sept. 6, 2007), aff'd on reh'g, 2008 WL 2358699 (D. Colo. June 6, 2008) (holding that a trustee may assert a claim under both section 541(a) and 544(a)); *In re Howland*, 516 B.R. 163 (Bankr. E.D. Ky. 2014), aff'd, 579 B.R. 411 (E.D. Ky. 2016), aff'd, 674 F. App'x 482 (6th Cir. 2017) (same).

and powers of a hypothetical judgment lien creditor under § 544(a)(1). In its research, the Court identified several cases wherein courts held that the rights and powers under § 544(a)(1) includes the ability to pursue claims against non-debtor third parties premised upon alter ego or successor liability claims. *See, e.g. In re Kwok*, 2024 WL 1261803 (Bankr. D. Conn. Mar. 22, 2024) (relying on the plain text of the provision and concluding that § 544(a) affords a trustee the rights and powers of a hypothetical judicial lien creditor to pursue an alter ego claim); *In re Revlon, Inc.*, 2023 WL 2229352, at *17 (Bankr. S.D.N.Y. Feb. 24, 2023) (finding that plaintiffs lacked standing to assert claims against a third party because, under the Code, the right to bring those claims belonged to the trustee). Accordingly, at the June 17, 2024 hearing, the Court requested additional briefing from the parties. The Debtors, the Talc Committee, and the FCR each submitted simultaneous direct and responsive briefing addressing whether the Successor Liability Claims constitute estate property, by virtue of the "strong arm" powers exercisable by the Debtors under § 544(a).

The parties disagree as to the scope of a trustee's powers under §544(a)(1). Both the Talc Committee and the FCR maintain that such powers are limited to avoidance actions, *see, e.g., Talc Committee's Supp. Br.* ¶ 4, ECF No. 232; *FCR Supp. Br.* ¶ 5, ECF No. 1195 in Case No. 23-13575; *FCR Reply* ¶ 9, ECF No. 1222 in Case No. 23-13575, while Debtors contend that § 544(a)(1) should not be so narrowly construed. The parties also disagree regarding whether the Successor Liability Claims are "particularized" or "general" under the *Emoral* test. The Talc Committee distinguishes "claims arising under California law" and the "product line exception claims," *see, e.g.*, *Committee's Supp. Memo* ¶ 7, ECF No. 232; *Committee's Supp. Reply* ¶¶ 14-24, ECF No.

16

242, and asserts that both types of claims are "direct" claims that are personal to individual creditors. Thus, the Talc Committee asserts—consistent with *Emoral*—that these Successor Liability Claims cannot be asserted by the Debtors under § 544(a)(1). Debtors disagree. The Court will take these arguments in turn and, like the parties, will apply separately the *Emoral* test to the claims arising under California law and the product line exception claims.

### 1.  The rights and powers under § 544(a)(1) extend beyond avoidance actions

As stated, the parties disagree as to the scope of the powers afforded a trustee under §544(a)(1). In resolving this dispute, this Court begins, as it must, with the plain language of the statute. *United States v. Diallo*, 575 F.3d 252, 256 (3d Cir. 2009) (quoting *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001)) ("The role of the courts in interpreting a statute is to give effect to Congress's intent . . . . Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute."); *see also Lamie v. United States Tr.*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L.Ed.2d 1024 (2004). Here, the statute provides, in relevant part, that: "[t]he trustee shall have . . . the rights and powers of, ***or*** **may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by**-- [a hypothetical lien creditor]." 11 U.S.C. § 544(a) (emphasis added). The Talc Committee contends that "the statute's plain meaning does not extend beyond avoidance actions." *Committee's Supp. Br.* ¶¶ 2, 11, ECF No. 232. The Court simply disagrees.

The use of the word "or" between the phrases "shall have . . . the rights and powers of" and "may avoid any transfer" indicates that these abilities should be read in the disjunctive. In other

words, under § 544(a), a trustee can engage in either activity: the trustee may avoid a transfer **or** may exercise the rights and powers of a hypothetical lien creditor.  The Talc Committee's reading of the statute—that the trustee's powers are limited to avoidance actions—thus ignores the plain statutory language and is at odds with Supreme Court case law interpreting the word "or" in other statutes.  For example, in *Encino Motorcars* the Supreme Court examined a statute that exempted a "salesman . . . primarily engaged in selling **or** servicing." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87, 138 S. Ct. 1134, 1141, 200 L. Ed. 2d 433 (2018) (interpreting 29 U.S.C. §213(b)(10)(A)) (emphasis added).  The Court ruled that "the use of 'or' to join 'selling' and 'servicing' suggests that the exemption covers a salesman primarily engaged in either activity." *Id.*; *see also United States v. Woods*, 571 U.S. 31, 45, 134 S. Ct. 557, 567, 187 L. Ed. 2d 472 (2013) (stating that the ordinary use of the word "or" "is almost always disjunctive").  Likewise, this Court reads the "or" in § 544(a) to mean that a trustee may engage in either activity: a trustee may either avoid a transfer **or** exercise the rights and powers of a hypothetical lien creditor.

The Committee also asserts that "binding Third Circuit law . . . precludes the application of section 544(a) to non-avoidance actions." *Committee's Supp. Reply* ¶ 3, ECF No. 242.  Again, the Court respectfully disagrees.  As an initial matter, nothing in the Third Circuit's *Emoral* decision precludes application of § 544(a).  While the circuit court in *Emoral* analyzed § 541(a) as the basis for the successor liability claims, the court did not rule that § 544(a) was unavailable. The Circuit neither addressed nor considered § 544(a).

In further support of its position, the Talc Committee also cites to *In re CitX Corp., Inc.*, 448 F.3d 672, 677 (3d Cir. 2006).  In that case, the Third Circuit reviewed a decision granting

summary judgment to a defendant on claims brought by a Chapter 7 bankruptcy trustee alleging malpractice and "deepening insolvency." The circuit court affirmed the district court's decision because it agreed that the trustee had not established a genuine issue of fact to support his allegations. *Id.* at 681. This Court acknowledges that the Third Circuit briefly references § 541 and § 544 in a footnote and "note[s] in passing" that "§ 544 does not authorize a deepening-insolvency tort claim." *Id.* at 677 n.6 (citing *In re Student Fin. Corp.*, 335 B.R. 539, 549 (D. Del. 2005)). However, the analysis in *CitX* focuses on the factual evidence supporting summary judgment—not the trustee's standing or the source of authority under which he brought the claims. Indeed, the Third Circuit neither cited nor discussed either § 544 or § 541 outside of the footnote. Moreover, the Third Circuit's comments in the footnote are specific to "deepening-insolvency claims . . . brought on behalf of the debtor corporation," *id.*, and, thus, should not be expanded to mean that § 544 does not authorize successor liability claims, generally, available to hypothetical lien creditors under state law. Even if such an interpretation were adopted, this Court points out that the Circuit's musings in the *CitX* footnote were clearly intended as *dicta*—as evidenced by the footnote's introductory words "[w]e note in passing." As such, it is not binding on this Court. Again, this Court is guided by the statutory text, and will not—and cannot—adopt an interpretation based on *dicta* that conflicts with a plain reading of the statute.

Next, the Talc Committee cites to *Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001), in which the Third Circuit stated that "[t]he trustee's 'avoiding' powers [under § 544] are not implicated here, as they relate to the trustee's power to resist pre-bankruptcy transfers of property." *Id.* at 356. The context of this statement, however, undercuts

the Talc Committee's contention that *Lafferty* dictates that § 544 authorizes *only* avoidance

actions.  In *Lafferty*, the committee—which had been authorized by stipulation to act as the trustee

and assert claims on behalf of the debtor corporations—sought to bring tort claims against debtors

and its professionals, including Lafferty.  In reviewing the district court's judgment dismissing the

claims against Lafferty, the Third Circuit first addressed the committee's standing, concluding that

the "deepening insolvency" claims effectively sought recovery for damages to the debtors and

thus, properly "belong[ed] to the [d]ebtors, rather than to the creditors." *Id.* at 349.  Having

established that the committee—with the rights and powers of the trustee—had standing to bring

the debtors' claims, the Third Circuit next addressed Lafferty's affirmative defense.  This, said the

Circuit, required it to consider whether post-petition events affected available equitable defenses.

*Id.* at 355.  It was in the context of this inquiry that the Third Circuit referenced § 541—for

purposes of establishing that "the explicit language of section 541 directs courts to evaluate

defenses as they existed at the commencement of the bankruptcy." *Id.* at 356.  Thus, the issue

discussed in *Lafferty*—the timing and availability of defenses—is distinguishable from the issue

before this Court—whether § 544 can serve as a basis for the Successor Liability Claims.

Moreover, although the Third Circuit stated in *Lafferty* that "Section 541 covers [successor

claims]," nothing in the opinion establishes that such claims could *not* be brought under § 544.

Rather, this Court concludes that—like many courts to address successor liability claims—the

*Lafferty* court (and the parties involved in the case) simply did not consider § 544 as a basis for

the claims asserted.

20

The FCR cites to the absence of case law holding that a trustee can bring claims under §544(a) in its opposition. Instead of arguing—as the Committee does—that Third Circuit law precludes application of § 544(a), the FCR takes a slightly different approach and points out that no "precedent [exists] in the Third Circuit that applies section 544(a) as broadly as the Debtors' requested relief." *FCR Supp Br.* ¶ 5, ECF No. 1195 in Case No. 23-13575; *see also FCR Supp. Reply* ¶ 9, ECF No. 1222 in Case No. 23-13575 ("stating that "section 544(a) **should** be applied narrowly") (emphasis added). However, this Court will not ignore the plain language of the statute merely because the Third Circuit has not yet directly addressed this precise issue. Instead, the Court is guided by the Third Circuit's reasoning in *Emoral*, which suggests that the analysis therein can, and should, be imputed to other theories of liability so long as their underlying purposes are similar. *See In re Emoral, Inc*., 740 F.3d at 881 (citing *Phar-Mor, Inc*., 22 F.3d 1228, and extending rationale used in cases involving veil-piercing causes of action to cases involving successor liability actions).

The Committee also cites *In re Bridge* and explains that, in *Bridge*, the Third Circuit describes § 544 as "simply defining 'the trustee's powers over rival creditors.'" *Committee's Supp. Reply* ¶ 3, ECF No. 242 (quoting *In re Bridge*, 18 F.3d 195, 198 (3d Cir. 1994)). This Court takes no issue with this characterization. Indeed, § 544(a) defines the rights and powers of a trustee as a hypothetical lien creditor. The Third Circuit made no findings in *Bridge* that limits those rights and powers to solely avoidance rights and powers; thus, it does not support the Committee's position. Moreover, although the circumstances in *Bridge* are factually distinguishable—there the Third Circuit considered a trustee's rights under § 544(a)(3); whereas here, the Court considers a

trustee's rights under § 544(a)(1)—this Court is informed by the *Bridge* decision. The *Bridge* court explained that "as of the date of the petition's filing, § 544(a)(1) confers upon the trustee the rights of a hypothetical judgment lien creditor." *In re Bridge*, 18 F.3d at 199. These rights, as the Committee concedes, are determined by state law, *see Committee's Supp.* ¶ 36, ECF No. 232 (citing *In re Bridge*, 18 F.3d at 200), and this Court will examine them accordingly.

Finally, the Committee contends that the Third Circuit's decision in *Nardulli & Sons* limits § 544(a)'s application to avoidance actions. *See Committee's Supp. Br.* ¶4, ECF No. 232; *Committee's Supp. Reply* ¶3, ECF No. 242 (citing *Gen. Elec. Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184 (3d Cir. 1988)). Again, this Court respectfully disagrees. In *Nardulli & Sons*, the Third Circuit held that "§ 544(a) is intended to protect general creditors of the debtor against 'secret' liens, [therefore,] that section should not be construed to provide the trustee with an interest superior to that of creditors whose interests were perfected prior to the commencement of bankruptcy proceedings." *Nardulli & Sons, Inc.*, 836 F.2d at 192. There is nothing in this ruling which suggests that the interests afforded to a trustee under § 544(a) are limited to interests in avoidance actions.

The Committee and the FCR additionally argue that the "overwhelming weight of well-reasoned authority holds that a debtor cannot utilize section 544(a) to prosecute non-avoidance claims." *Committee's Supp. Reply* ¶ 6-12, ECF No. 242; *see also FCR Supp. Reply* ¶¶ 7-8, ECF No. 1222 in Case No. 23-13575. Admittedly, a line of cases exists narrowly interpreting a trustee's authority to pursue creditor claims under § 544(a). *See, e.g.*, *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1226 (8th Cir. 1987). Most of these cases, including *Ozark*, rely on the Supreme

Court decision in *Caplin*, in which the High Court interpreted Chapter X of the Bankruptcy Act and concluded that a trustee lacked standing to assert claims on behalf of creditors. *See Caplin v. Marine Midland Grace Tr. Co. of New York*, 406 U.S. 416, 92 S. Ct. 1678, 32 L. Ed. 2d 195 (1972).

As an initial matter, *Ozark*, a decision by the Eighth Circuit Court of Appeals, is not binding on this Court.  *Ozark* is also factually distinguishable in that the claims at issue in that case were found to be "personal to the corporate creditors rather than the corporation." *Ozark* 816 F.2d at 1225.  Thus, the claims at issue in *Ozark* would likewise fail the *Emoral* test in the Third Circuit. Notably, the *Ozark* decision relies heavily on the Supreme Court's ruling in *Caplin*.  However, because *Caplin* pre-dates the modern Bankruptcy Code, it is not determinative as to the scope of § 544.  The open-endedness of this issue is evidenced by the competing caselaw: on one hand, those cases cited by the Committee and the FCR limiting § 544(a) to avoidance actions; and on the other hand, those cases cited by the Debtors and discussed *infra*, holding that § 544(a) encompasses more than mere avoidance powers.  While this Court is cognizant of the Eighth Circuit's thorough analysis of the legislative history of § 544(a), the statutory text is unambiguous, and accordingly resort to legislative history or underlying legislative intent is not appropriate. *See, e.g., Lamie*, 540 U.S. at 534; *see also Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 406 (3d Cir. 2004).

Ultimately, the cases relied on by the Committee and the FCR either do not directly address the issue before this Court, are bankruptcy-level decisions, or are out-of-circuit opinions and, thus, are not dispositive.  This Court must be guided by the plain language of the statute, which simply does not place the limitations on a trustee's rights and powers, as advanced by the Committee and

FCR.   Instead, this Court remains guided by *Emoral* and joins the line of cases—albeit the minority—holding that a trustee can utilize the rights and powers under § 544(a) to pursue available state law remedies.   As the Tenth Circuit succinctly stated:

> To understand the full import of § 544, one must first understand the power of a bankruptcy trustee to stand in the shoes of an [sic] hypothetical creditor of the debtor to effect a recovery from a third party. Simply stated, from the reservoir of equitable powers granted to the trustee to maximize the bankruptcy estate, Congress has fashioned a legal fiction. Not only is a trustee empowered to stand in the shoes of a debtor to set aside transfers to third parties, but the fiction permits the trustee also to assume the guise of a creditor with a judgment against the debtor. Under that guise, the trustee may invoke whatever remedies provided by state law to judgment lien creditors to satisfy judgments against the debtor.

*Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990); *see also, e.g.*, *In re Duffin*, 457 B.R. 820, 828 (B.A.P. 10th Cir. 2011) ("We agree that the powers given to a trustee under §544(a) are not limited to avoidance of transfers but specifically include broader 'rights and powers.' ");   *In re MS55, Inc.*, 2007 WL 2669150, at *11 (D. Colo. Sept. 6, 2007), aff'd on reh'g, 2008 WL 2358699 (D. Colo. June 6, 2008) (stating that "the language of section 544(a) supports a finding that trustees are endowed with more than solely avoidance powers"); *In re Guillot*, 250 B.R. 570, 593 (Bankr. M.D. La. 2000) (explaining that "the lien creditor status of the trustee (as of the commencement of the case) . . . is a power set off from the § 544(a) avoidance power").

The Court remains unpersuaded by the Committee's contention that allowing a trustee to bring a non-avoidance action under § 544 would lead to absurd or unworkable outcomes. *See Committee's Supp. Br.* ¶¶ 18-25 (citing *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 338 (3d Cir. 2006) (citations omitted) ("A basic tenet of statutory construction is that courts should interpret a law to avoid absurd or bizarre results.").   The Court holds a differing view.   Such an interpretation

of § 544 would **not**—as the Committee suggests—permit a trustee to pursue claims that are personal to creditors.  Indeed, such efforts would fly in the face of the Third Circuit's directive in *Emoral* mandating that claims rooted in successor liability theories must be general. *See In re Emoral*, 740 F.3d at 879.

The Committee next posits that claims brought under § 544(a)(1) are time limited. *See Committee's Supp. Br.* ¶ 20.  Specifically, the Committee quotes a bankruptcy court in the District of Columbia, which asks, "if the hypothetical judgment lien creditor extended credit only on the date of commencement of the bankruptcy case, how can she sue based on a wrong that occurred before the extended credit?" *In re Greater Se. Cmty. Hosp. Corp.*, 333 B.R. 506, 520 (Bankr. D.D.C. 2005).  The Court notes that the Committee's argument here is similar to the FCR's argument that § 544(a) is inapplicable because "tort claimants are involuntary creditors—victims injured by the Debtors' products—and not lenders that extended creditor to the Debtors." *FCR Supp. Br.* ¶ 3, ECF No. 1195.  Both positions ignore the "legal fiction" created by the strong-arm provision, which allows a trustee to "assume the guise of a creditor with a judgment against the debtor [,] and "invoke whatever remedies provided by state law to judgment lien creditors to satisfy judgments against the debtor." *Zilkha Energy Co.*, 920 F.2d at 1523.  The temporal limitations suggested by the Committee ignore the rights and powers afforded to a trustee by virtue of § 544(a), which vest in the trustee "at the time of the commencement of the case" through the bankruptcy filing, itself. *See* 11 U.S.C. § 544(a)(1).

The Committee also argues that "asbestos creditors cannot be bound by any settlement or resolution of the Successor Liability Claims obtained by the Debtors on their behalf without their

consent." *Committee's Supp. Br.* ¶ 22, ECF No. 232.  This argument is contrary to the holding in *Emoral* in which the Circuit explained that, to the extent claims are general, the trustee is the proper party to bring the claim and the "creditors are bound by the outcome of the trustee's action." *In re Emoral, Inc*., 740 F.3d at 879 (quoting *St. Paul Fire & Marine Ins. Co*., 884 F.2d at 701).

The Committee next contends that the rights and powers referenced in § 544(a) "are limited to attaching and seizing the **debtor's** property pursuant to state law[.]" *Committee's Supp. Br.* ¶ 23, ECF No. 232 (emphasis in original).  However, to adopt such an interpretation would require this Court to read words into the statute that simply are not there.

Finally, the Committee asserts that the Debtors' interpretation of § 544(a) would render §544(b) superfluous. *Committee's Supp. Br.* at ¶ 25.  Subsection (b) of § 544 permits a trustee to "avoid any transfer . . . or any obligation . . . that is voidable under applicable law by a creditor[.]" Subsection (a), on the other hand, affords a trustee the rights and powers of certain hypothetical creditors.  The court in *Kwok* succinctly explained the distinction between § 544(a) and (b):

> Section 544(a) stands in contrast with section 544(b). While section 544(a) provides a bankruptcy trustee with general powers to assert certain rights and powers of certain classes of **hypothetical** creditors, section 544(b) provides a bankruptcy trustee with the power to bring actions to avoid transfers, which could be brought by an **actual** creditor. Whereas the limiting principal of section 544(a) is that the rights and powers must be those the creditors at large could bring, rather than the particularized claims belonging to particular creditors, the limiting principal of section 544(b) is that the actions brought must be avoidance actions that a particular creditor could bring.

*In re Kwok*, 2024 WL 1261803, at *3 (emphasis added).  Thus, this Court's interpretation of § 544(a) does not render § 544(b) meaningless or superfluous: each subsection empowers the trustee with unique tools through which recovery can be enhanced for *all* creditors.

This Court acknowledges, as has the Third Circuit, that it "may seem strange" to hold that a cause of action for successor liability against Brenntag or other third parties is property of Debtors' bankruptcy estates. *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1240 n.20 (3d Cir. 1994); *see also In re Emoral*, 740 F.3d at 881. However, there are policy reasons underlying this "strange" scenario. In *In re Emoral*, the Circuit found that personal injury claims brought by plaintiffs against the debtor's successor, Aaroma, were property of the debtor's estate. The Third Circuit noted that "[a]s a practical matter, it is difficult to imagine a factual scenario in which a solvent Emoral, outside of the bankruptcy context, would or could bring a claim for successor liability against Aaroma." *In re Emoral, Inc.*, 740 F.3d at 881. The Circuit reconciled this glitch in the matrix by referring to the principles underlying the successor liability doctrine, stating that "the purpose of successor liability is to promote equity and avoid unfairness, and it is not incompatible with that purpose for a trustee, on behalf of a debtor corporation, to pursue that claim." *Id.* (citing *Phar–Mor, Inc.*, 22 F.3d at 1240 n. 20). In a similar vein, pursuit of Successor Liability Claims in good faith by the Debtors in this case will result in more efficient and equitable resolutions, thus, maximizing value to creditors.

Indeed, when a company files for bankruptcy, the automatic stay operates to prevent creditors from pursing their own remedies against property of the bankruptcy estate. 11 U.S.C. § 362. And where a cause of action is property of the bankruptcy estate, the trustee (or debtor-in-possession) is the appropriate party to bring such an action. Accordingly, the Debtors in the instant case have standing to assert the Successor Liability Claims and creditors are precluded from pursuing them until they have been abandoned or upon further order of the Court. The Court is

compelled to reach this result considering the explicit language of—and the principles underlying—the Bankruptcy Code. *See* 11 U.S.C. § 544(a)(1); *In re Emoral, Inc.*, 740 F.3d 881 (holding that where a cause of action is "based upon preventing inequity or unfairness, it is not incompatible . . . to allow a debtor corporation to pursue a claim based upon such a theory"); *In re Revlon, Inc.*, 2023 WL 2229352, at *16 ("What Plaintiffs are not entitled to do is to usurp the trustee's exclusive role, augmented by the UCC where appropriate, to seek to recover and protect the estate's property, to avoid impermissible pre-bankruptcy transactions, and to administer the estate including by appropriately settling disputes that affect the estate's rights. These are core estate functions."); *In re Keene Corp.*, 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994) (discussing the policy considerations behind the automatic stay provision and stating that "[w]here bankruptcy creditors are concerned, the race is not supposed to belong to the swift; equality rather than expedition is the governing principle").

This Court finds additional support in the multitude of cases in which courts have ruled that a trustee had standing to bring the general claims of the creditors at large, specifically in the context of veil-piercing, alter ego, and successor liability actions. *See, e.g.*, *In re Wilton Armetale, Inc.*, 968 F.3d 273, 283 (3d Cir. 2020) ("The class action plaintiffs that invoke [a claim against a successor corporation for the tort liability of the predecessor] allege a general injury, their standing depends on their status as creditors of [the debtor], and their success would have the effect of increasing the assets available for distribution to all creditors. For the same reasons stated with respect to the piercing claims, claims based upon successor liability should be asserted by the trustee on behalf of all creditors."); *In re Tronox Inc.*, 855 F.3d 84, 99 (2d Cir. 2017) (stating that

Congress's intent by enacting the automatic stay provision was "to protect all creditors by making the trustee the proper person to assert claims against the debtor" and explaining that "[t]his reasoning extends to common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion") (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)); *In re Kwok*, 2024 WL 1261803 (holding that § 544(a) affords a trustee the rights and powers of a hypothetical judicial lien creditor to pursue an alter ego claim); *In re Revlon, Inc*., 2023 WL 2229352 (finding that plaintiffs lacked standing to assert claims against a third party under alter ego theories because, under the Code, the right to bring those claims belonged to the trustee).

Having determined that § 544(a) can serve as a basis for a trustee's assertion of claims as a hypothetical lien creditor and constitute estate property under § 541(a)(7)—in addition to such claims that assuredly fall under § 541(a)(1)—the Court now addresses whether Debtors may assert the specific claims at issue in this case.

### 2. Claims Arising Under California Law

Here, the Successor Liability Claims seek to establish a non-debtor's liability bottomed on Debtors' liability, through allegations of successor liability, alter ego, or some similar theory. Pursuant to *Emoral* the question then becomes whether the Successor Liability Claims are general—as Debtors argue—or whether they are particularized or direct—as alleged by the Talc Committee. "[A] general claim 'inures to the benefit of all creditors' by enlarging the estate, and so 'the trustee is the proper person to assert the claim.' " *In re Wilton Armetale, Inc*., 968 F.3d 273, 282 (3d Cir. 2020) (quoting *In re Emoral*, 740 F.3d at 879) (other citations omitted). "The distinction between general and personal claims 'promotes the orderly distribution of assets in bankruptcy' by funneling all asset-recovery litigation through a single plaintiff: the trustee." *In re Wilton Armetale, Inc*., 968 F.3d at 282 (quoting *In re Emoral*, 740 F.3d at 879). Where a claim is particularized or "personal," however, the individual creditor has authority to bring it. When distinguishing between general and personal claims, courts must "examine the nature of the cause of action itself" and the theory of liability asserted. *In re Emoral, Inc.*, 740 F.3d at 879.

The Committee contends that the Successor Liability Claims arising under California law are direct and personal claims under the *Emoral* test. *Committee's Supp. Reply* ¶¶ 14-16. As such, the Committee concludes that these claims remain the exclusive property of creditors and cannot be advanced or settled by Debtors. Debtors maintain that these claims are not personal because creditors cannot trace their injuries to Brenntag or any other non-debtor third party. *See Debtors Supp. Reply* ¶ 2, ECF No. 241. The Court agrees with Debtors' characterization.

In reaching this conclusion, this Court is guided by the district court's analysis in *Purdue*. *In re Purdue Pharma, L.P.* 635 B.R. 26 (S.D.N.Y. 2021). In that case, Judge McMahon explained that "direct" or "particularized" claims are those claims that "are not derivative of Purdue's liability, but are based on the Sacklers' own, individual liability, predicated on their own alleged misconduct and the breach of duties owed to claimants other than Purdue." *Id.* at 90. In other words, "'[d]irect' claims are based upon a 'particularized' injury to a third party that can be directly traced to a non-debtor's conduct." *Id.* In applying that definition to the case presently before this Court, it is evident that the Successor Liability Claims brought under California law are general. These claims are not based on any "particularized" injury that can be traced to Brenntag or any other non-debtor party. Rather, the claims are based entirely on Debtors' actions and conduct. Brenntag and other third parties are implicated solely through their business dealings with Debtors; therefore, the California Claims are derivative. *See Purdue*, 365 B.R. at 90 ("'Derivative' claims are those [that] seek to recover from the estate indirectly on the basis of the debtor's conduct, as opposed to the non-debtor's own conduct.") (cleaned up).

Because the California Claims are general, the second prong of the *Emoral* test is satisfied. As to the first prong—which asks whether the trustee could have asserted the claim under applicable state law—it is of no moment that the Debtors do not possess a state law right to pursue certain Successor Liability Claims. Section 544(a)(1) affords the Debtors the opportunity to pursue any such claim that a hypothetical creditor could bring for the benefit of all creditors. Because Debtors can bring the claims by virtue of a hypothetical judgement lien creditor's ability to pursue a judgment against a debtor's alter ego or successor for claims against a debtor which

remain unsatisfied, the California Claims satisfy the remaining prong of the *Emoral* test. Accordingly, these claims constitute estate property under § 541(a)(7).[12]

### 3. Product Line Claims

The product line exception to liability generally "imposes strict liability for injuries caused by defects of a product line on a corporation that acquires all or substantially all of the manufacturing assets of another corporation and undertakes essentially the same manufacturing operation." *Committee's Opp'n* ¶ 41, ECF No. 90 (citing *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 431 A.2d 811 (1981)).  The Successor Liability Claims at issue in this case include product line claims against Brenntag based on its acquisition of Debtors' assets.  The Committee contends that claims premised on this theory are "undisputedly direct claims under *Emoral*" because "they (i) are predicated upon individualized harm suffered by each claimant; (ii) cannot be asserted by a corporation against its own successor; and (iii) are specific to Asbestos Claimants and cannot be brought by all of the Debtors' creditors." *Committee's Supp. Br.* ¶ 7, ECF No. 232.

---

[12] Relief is available under the substantive laws of all potential, applicable states (New Jersey, New York, Delaware, and California). *See, e.g.*, *Bussell v. De Waft Prod. Corp.*, 259 N.J. Super. 499 504-05 (App. Div. 1992) (judgment creditor could bring action against judgment debtor's alleged successor); *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 341, 431 A.2d 811, 816 (1981) (successor liability doctrine was developed "to protect the rights of commercial creditors and dissenting shareholders following corporate acquisitions"); *Arben Corp. v. Durastone, LLC*, 186 A.D.3d 599, 129 N.Y.S.3d 441 (2020) ("[Appellant] may commence a proceeding pursuant to CPLR 5225 (b) seeking to enforce a *600 default judgment against an alleged successor in interest under an alter ego theory . . . ."); *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130 (2d Cir. 1997) (New York law recognizes reverse veil-piercing) (citing *State v. Easton*, 169 Misc.2d 282, 647 N.Y.S.2d 904, 908-09 (Sup. Ct. 1995)); *Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1072 (Cal. Ct. App. 2011), *as modified* (Aug. 9, 2011) (judgment creditor is authorized under California Code of Civil Procedure 187 to amend judgment to include alter ego of judgment debtor); *Rubio v. CIA Wheel Grp.*, 63 Cal App. 5th 82, 102, 277 Cal. Rptr. 3d 450, 49 (2021) (citing *Marks v. Minnesota Mining & Mfg.* Co., 187 Cal. App. 3d 1429, 232 Cal. Rptr. 594 (Ct. App. 1986)) (corporate successor succeeds to all of predecessor's liabilities and obligations und *de facto* merger doctrine); *Gadsen v. Home Pres. Co.*, 2004 WL 485468 at *1 (Del. Ch. Feb. 20, 2004) (judgment creditor could pierce corporate veil of corporate judgment debtor); *Corp. Prop. Assocs. 8, L.P. v. Amersig Graphics, Inc.*, 1994 WL 148269 (Del. Ch. Mar. 31, 1994).

Debtors concede that these product line claims "are not held by every (or even practically every) hypothetical creditor who extends credit to the debtor. Rather, they are held only by those creditors who are injured by products manufactured by the debtor." *Debtors' Supp. Br.* ¶ 15, ECF No. 233.  Accordingly, these claims appear particularized or direct and, as such, arguably would belong to the creditors.  However, all Successor Liability Claims—including the product line exception claims—seek, at their core, to hold a non-debtor entity liable for Debtors' tort liabilities. The harms alleged cannot be traced directly to Brenntag or any other non-debtor third party—no matter the theory of liability utilized.  And although the product line claims are pleaded in a manner that renders them unique to only those plaintiffs who were injured by the product at issue, they are premised on the same set of facts as any other theory of successor liability asserted.  In this respect, they are consistent with all successor liability claims in that a target successor's liability is not grounded upon the underlying injury and the predecessor's activities which created the harm, but rather the subsequent acquisition of assets by the successor and its ensuing operations.

Under New Jersey's version of product line theory, the purchaser of a company's manufacturing assets is strictly liable for defects where the purchaser "undertakes essentially the same manufacturing operation as the selling corporation[.]" *Ramirez v. Amsted Indus., Inc*., 86 N.J. 332, 358, 431 A.2d 811, 825 (1981).  The facts necessary to make such findings are general to the estate and not personal to a specific creditor.  The same holds true under California's version of product line theory, which requires an inquiry into the purchaser's acquisition, the purchaser's ability to assume risk, and the fairness in imposing liability upon the purchaser.  *Hernandez v. Enter. Rent-A-Car Co. of San Francisco*, 37 Cal. App. 5th 187, 249 Cal. Rptr. 3d 467 (2019).

Again, the facts necessary to determine successor liability are general to all creditors. The Court finds no legal or factual justification to carve-out product line claims from the dictates of *Emoral* in treating all successor liability claims as estate property.

Notably, courts have looked beyond the language of the complaints and the theories pleaded to prevent individual creditors from pursuing claims belonging to bankruptcy estates. *See In re Revlon, Inc.*, 2023 WL 2229352 at *12-17 (Bankr. S.D.N.Y. Feb. 24, 2023) (collecting cases where plaintiffs used strategic pleading choices in an effort to transform a derivative claim to a non-derivative one); *see also In re Tronox Inc.*, 855 F.3d 84, 99 (2d Cir. 2017) (explaining that "so-called 'derivative claims'—i.e., claims 'based on rights "derivative" of, or "derived" from, the debtor's'—typically constitute 'property of the estate' ") (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 88 (2d Cir. 2014)). "[A] creditor's claim against a third party is not particular simply because the trustee cannot bring the exact claim as the creditor." *In re Port Morris Tile & Marble LP*, 645 B.R. 500, 515 (Bankr. S.D.N.Y. 2022). When examining claims, "[t]he proper analysis . . . involves a comparison between the harms that are subject of the creditors' claim and the harms that are actionable via the trustee's claims." *Id.*

Here, the product line claims are bottomed on the fact that a successor continued to manufacture Debtors' product line. The harms alleged in the product line claims are, thus, the same harms alleged in the Successor Liability Claims premised on other theories of liability: all allege that Debtors' product caused injuries. Significantly, the facts underlying these claims are available to all creditors. *See, e.g.*, *In re Tronox Inc.*, 855 F.3d at 103–04 (agreeing with *Emoral*

that the fact that plaintiffs "had an underlying harm specific to them did not put the claims

automatically outside the estate" and finding the claims to be general).

The Court is aware that the facts of the instant case are distinguishable from those before

other courts that have deemed general claims that were pleaded as particularized. For example,

unlike the claims at issue in *Revlon*—which were filed post-petition and analyzed under § 541(a)—

the product line claims in this case were filed prepetition. *See In re Revlon, Inc.*, 2023 WL

2229352. Likewise, in *Kwok*, the trustee sought to pursue alter ego and veil piercing claims,

whereas the claims at issue here are premised on other theories of successor liability. *See In re

Kwok* 2024 WL 1261803. Nevertheless, the analysis remains unchanged. Looking at the nature

of the product line claims, *see Emoral, Inc.*, 740 F.3d at 879, this Court resolves that they are

indistinguishable from claims brought under other theories of successor liability. Because—for

reasons previously discussed—those claims are estate property, pursuit of the product line claims

outside of the bankruptcy would interfere with the estate's right and interests and would prevent

Debtors from both maximizing the value of its assets and providing a benefit for all creditors. *See

In re Revlon, Inc.*, 2023 WL 2229352, at *14 (explaining that "claims can also be derivative if they

would usurp estate rights and interests that are conferred by operation of the Bankruptcy Code

itself") (citing *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989)).

The Court grants that *Emoral* did not specifically address claims asserted under a product

line theory and, instead, grappled with liability based on a "mere continuation" theory.

Nonetheless, nothing about the *Emoral* decision indicates that the analysis undertaken would not

apply similarly to a claim grounded on a different theory—especially when that claim is based on

35

the same facts and alleges the same harms; namely, facts regarding the contractual and transactional relationship between the Debtors and Brenntag and harms stemming from injuries due to Debtors' product. The viability of a Successor Liability Claim will not depend on facts that are unique to any individual Tort Claimant. Rather, it is dependent on the relationship between the initial entity and its successor. *See, e.g.*, *Pub. Serv. Elec. & Gas Co. v. Cooper Indus., LLC*, 678 F. Supp. 3d 611 (D.N.J. 2023) (discussing elements of successor liability under New Jersey law); *Rubio v. CIA Wheel Grp.*, 63 Cal. App. 5th 82, 102, 277 Cal. Rptr. 3d 450, 469 (2021) (discussing elements of successor liability under California law). Although the Third Circuit in *Emoral* analyzed the claims at issue under a theory of successor liability bottomed on "mere continuation," its holding remains instructive, and the Court can conceive of no reason why the general versus personal analysis under one theory of successor liability should differ when a successor liability claim is premised on a different theory. In this Court's view, the same rationale should apply. The Court finds further support for this conclusion in the Third Circuit's reasoning in *Emoral*, which—as discussed earlier—suggests that the analysis used can, and should, be imputed to other theories of liability so long as their underlying purposes are similar. *See In re Emoral, Inc*., 740 F.3d at 881 (citing *Phar-Mor, Inc*., 22 F.3d 1228, and extending rationale used in cases involving veil-piercing causes of action to cases involving successor liability actions).

In sum, all Successor Liability Claims seek—in some fashion—to impute Debtors' liability to a non-debtor entity. The harms alleged and the factual allegations necessary to establish a Successor Liability Claim—whether it is based on "mere continuation" theory, "product line exception," or any other legal basis—are not unique to any one creditor. Given the factual overlaps

and identical harms alleged, the Court concludes that the Successor Liability Claims are not direct claims under the *Emoral* test, no matter the theory under which they are pursued.  As a result, they are property of the estate under § 541(a)(1) and  § 541(a)(7) [by way of § 544(a)(1)], and at this juncture, the Debtors are the appropriate parties to bring these claims.

### B.  The Remaining Objections

Having determined that the Successor Liability Claims are property of the bankruptcy estates, many of the remaining objections to Debtors' Motion are rendered moot.  This Court need not address the Talc Committee's arguments that factual disputes exist as to the *type* of claims at issue (i.e. "mere continuation" claims or product line exception claims), or that disputes exist as to which state's laws should govern each claim.  Likewise, a choice of law analysis is not required.  However, certain other objections raised by the Committee, FCR, and OCWD warrant further discussion.  The Court takes this opportunity to address them.

### 1.  No Factual Issues Remain

First, the Committee asserts that genuine issues of fact exist regarding whether each claim listed in Appendix A to the Complaint is a derivative claim. *Committee's Opp'n* ¶¶ 56-60, ECF No. 90.  While conceding that "[t]he definition of 'Successor Liability Claims' in the Motion is consistent with" the requirement that the precluded claims must be "derivative claim[s] based on an injury caused by the Debtors," the Committee posits that the Debtors "fail to actually establish through admissible facts or clear descriptions that . . . none of the Appendix A Claims are direct claims against Brenntag." *Id.* at ¶¶ 56, 57.  This argument puts the cart before the horse.  It is not necessary at this juncture for Debtors or the Court to conduct an exhaustive review of each,

individual claim. The Court's adjudication of Counts I and IV of the Complaint does not require a ruling that any particular lawsuit on Appendix A asserts Successor Liability Claims against Brenntag or other third parties. For the same reasons, a claim-by-claim choice of law analysis for all the claims is unnecessary, especially considering the Committee's failure to demonstrate an actual conflict of law warranting a choice of law analysis. Rather, for purposes of this Motion it is sufficient for Debtors to establish a category of claims that belong to Debtors as a matter of law; namely, the Successor Liability Claims as those claims are defined in the Complaint. Debtors have satisfied that burden.[13] If, in applying this Court's ruling to litigation going forward, a dispute arises regarding the characterization of a given claim, this Court retains jurisdiction to determine whether such claim constitutes a Successor Liability Claim.

The Committee also contends that additional discovery is needed to understand the scope of the relief sought by Debtors and to investigate the enforceability of any indemnification claims against Debtors. *Committee's Opp'n* ¶¶ 101-07, ECF No. 90. In rejecting this argument, this Court reiterates that a fact-intensive inquiry into the details of every claim is not necessary to resolve the primarily legal issue before of the Court; namely, whether the Successor Liability Claims as those claims are defined in the Complaint constitute property of the estate. Additional discovery into related issues, such as indemnification obligations, would not alter this Court's analysis under *Emoral*.

### 2. Declaratory Relief is Appropriate

---

[13] The uncontroverted record before the Court evidences the existence of at least seventeen (17) complaints introduced at the TRO Hearing and three (3) complaints annexed as exhibits to Mr. Meghji's Declaration, which allege Successor Liability Claims, giving rise to the requested declaratory relief controversy.

The Talc Committee asserts that Debtors "may be seeking to stay [the Successor Liability Claims] in order to obtain undue leverage over their creditors for the benefit of a non-party to these Chapter 11 Cases." *Committee's Opp'n* ¶ 74, ECF No. 90.  In support of this argument, the Committee relies on *G-I Holdings*. *In re G-I Holdings, Inc.*, 2008 WL 11513187, at *7 (D.N.J. May 30, 2008).  However, the Court finds that case distinguishable.  In *G-I Holdings*, the court declined to entertain a request for declaratory judgment because it appeared to the court that plaintiffs were attempting to "circumvent the choice of forum" and "influence the law applicable to the successor and alter ego liability issues." *Id.* at *7.  Here, however, Debtors have not sought declaratory relief for such improper purposes.  Instead, they are pursuing declaratory relief in order to maximize value for the estate and all creditors, and seek a determination governed by federal bankruptcy law.

Although the Committee and FCR argue against declaratory relief sought in the Motion, both parties concede "there is the considerable amount of discretion built into the Declaratory Judgment Act itself." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 646 (3d Cir. 1990) (citing 28 U.S.C. § 2201); *see also FCR Opp'n* ¶ 15, ECF No. 675 in Case No. 23-13575 (conceding that the Court has "substantial discretion" to issue declaratory relief).  In determining whether an issue is "ripe" "in the context of a declaratory judgment action, the Third Circuit articulated three principles which should be considered: (i) the adversity of the interest of the parties, (ii) the conclusiveness of the judicial judgment, and (iii) the practical help, or utility, of the judgment." *In re Grand Ct. Lifestyles, Inc.*, 309 B.R. 117, 122 (Bankr. D.N.J. 2004) (citing *Step-Saver*, 912 F.2d at 646-47).  "According to the Third Circuit, '[p]arties' interests are adverse

where harm will result if the declaratory judgment is not entered.'" *California Cas. & Fire Ins. Co. v. Montez*, 2024 WL 180822, at *5 (D.N.J. Jan. 17, 2024) (quoting *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995)).  Here, permitting individual pursuit of the Successor Liability Claims will result in an effective race to the courthouse and impede the Debtors' ability to bring money into the estate for the benefit of all creditors.  That potential harm is "real and substantial" and, thus, the matter is ripe for declaratory relief. *See Travelers Ins. Co. v. Obusek*, 72 F.3d at 1154.

As to the second factor—the conclusiveness of the judicial judgment—courts "must determine whether judicial action at the present time would amount to more than an advisory opinion based upon a hypothetical set of facts." *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994). "Questions that are predominantly legal 'are generally amenable to a conclusive determination in a pre[-]enforcement context.' " *California Cas. & Fire Ins. Co. v. Montez*, 2024 WL 180822, at *5 (quoting *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d at 1468).  Once again, here, the question of whether the Successor Liability Claims constitute estate property is predominantly legal in nature and amounts to more than an advisory opinion.  Thus, this factor also suggests ripeness.

Finally, the Court addresses the utility of the declaratory relief.  Declaratory relief in Debtors' favor will undeniably serve a useful purpose; namely, the promotion of fairness and equity among creditors and the maximization of value to the estate.  Given the specificity of this ruling and the concrete definition of Successor Liability Claims in the Complaint, this Court is confident that parties will be able to use the declaratory relief to discern which claims constitute

Successor Liability Claims. The Court simply does not accept the contention advanced by the FCR that a ruling in Debtors' favor will provide no useful guidance or that application of this ruling will result in "endless requests for clarification." *FCR Opp'n* ¶ 18, ECF No. 675 in Case No. 23-13575. Because all three factors suggest ripeness, declaratory relief is appropriate.

As to the impact of declaratory relief on future claims, the FCR argues that—because future claimants are not parties to the adversary proceeding—they cannot be bound by any declaratory judgment entered in this adversary proceeding. *FCR Supp. Br.* ¶ 11, ECF No. 1195 in Case No. 23-13575. The impact of the instant ruling on claimants who have not yet sought relief, however, is a question for another day. At this juncture, the Court's ruling is limited to the primarily legal determination that the Successor Liability Claims—as those claims are defined in the Complaint—constitute estate property. To the extent a future claimant files a claim and wishes to challenge the collateral or preclusive effect of the instant ruling, the Court will address the issue at that time. However, such issues are not ripe for decision today.

### 3. Due Process Concerns

The Committee argues that Debtors' preference to settle the successor liability issues in a single proceeding rather than thousands of individual lawsuits cannot trump plaintiffs' due process rights. *Committee's Opp'n* ¶ 77, ECF No. 90. This argument assumes that Debtors' pursuit of the Successor Liability Claims is merely a strategic choice and not tied to the fact that the Successor Liability Claims are estate property that—in accordance with the Bankruptcy Code—are appropriately pursued by the trustee or debtor-in-possession.

**4.   Allegations of Improper Purpose and Policy Considerations Do Not Warrant Denial of Summary Judgment**

The Committee makes much of the fact that NICO may bear ultimate responsibility for any successor liability exposure that Debtors are unable to satisfy.  However, the fact that Debtors may be entitled to indemnification does not eliminate the fact that—prior to receiving indemnification—Debtors must first be exposed to liability.  The Debtors' liability is what triggers the impact on the estate and underscores the policy reasons behind the Debtors' rights to step into the shoes of a hypothetical judicial lien creditor.  Indeed, the Committee concedes that "[t]he Debtors are certainly entitled to avail themselves of the protections under chapter 11 to bring finality to their own liabilities and facilitate an equitable distribution of their remaining assets to creditors." *Committee's Opp'n* ¶ 91, ECF No. 90.  That is what Debtors are seeking to accomplish here.

Notably, the Committee expresses concern that "Debtors are seeking sole authority to settle Successor Liability Claims in order to obtain Court approval to settle those claims" without proper analysis and "in a manner that is beneficial to NICO to the detrimental to [sic] Tort Claimants, rather than in [a] manner that is truly fair and equitable." *Committee's Opp'n* ¶ 94, ECF No. 90.  This concern ignores the role that courts play in the approval of settlements and implies that this Court will rubber-stamp Debtors' proposed settlement, even if it does not meet the standard for approval set forth in binding case law.  The Court takes this opportunity to assure the parties that, prior to approving settlements, the Court carefully considers all the *In re Martin* factors, including "the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).  It will

undertake this same process should Debtors in the instant case propose a settlement of the Successor Liability Claims.

The FCR also challenges Debtors' attempt to pursue the Successor Liability Claims against non-debtors, arguing that—because the non-Debtors are solvent—claims against them outside of bankruptcy will not reduce claimant recoveries. *FCR Opp'n* ¶ 3-4, ECF No. 1222 in Case No. 23-13575.   The FCR specifically focuses on the financial condition of Debtors' ultimate parent company, Berkshire Hathaway, Inc., and suggests that the Tort Claimants may "prefer to accept a modest recovery in these chapter 11 cases by pursuing a Debtor-only plan that does not provide solvent non-Debtor, third parties with releases." *Id.* at ¶ 5.   As an initial matter, the issue presently before this Court does not implicate third-party releases but, instead, asks whether the Successor Liability Claims are estate property.   Moreover, as this argument raises policy considerations that, in this Court's view, further weigh in favor of deeming the Successor Liability Claims to be property of the estate.   The FCR's contends that preserving creditors' ability to pursue claims against solvent non-debtors outside of this bankruptcy "is likely to be the value-maximizing path for claimants[.]"   This bald statements ignores the multitude of "collective action problem[s]" highlighted by Justice Kavanaugh in his thorough dissent in *Purdue*. *FCR Opp'n* at ¶ 5; *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071, 2100 (2024).

Indeed, the FCR focuses solely on the solvent financial condition of the non-debtor entities in support of this argument.   This narrow focus disregards the risks, uncertainties, costs, and delays that accompany these litigations.   Let's not ignore the obvious: these Debtors have not operated in two decades and hundreds of claimants have already been waiting years and years to have their

claims heard.  They are deserving of a fair and equitable recovery in the near term, without the risk and delays inherent in the tort system.  Moreover, given the collective action considerations discussed in *Purdue*, the Court is unpersuaded that the Tort Claimants' individual pursuit of these claims against non-debtor third parties truly would maximize value; and remains far less confident that such a path maximizes value for *all* claimants.  Rather, this Court holds firm that allowing Debtors to pursue the Successor Liability Claims will prevent the proverbial race to the courthouse, will ensure more equitable creditor recoveries, and will enable creditors to avoid "the significant risk, cost and delay (potentially years) that would result from pursuing the [non-debtors] and related parties through litigation." *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. at 2101.

## C.  Derivative Standing is not before the Court

OCWD requests that—to the extent the Court deems the Successor Liability Claims property of the bankruptcy estate—the Court grant derivative standing to pursue those claims the creditors. *See OCWD's Opp'n* ¶ 4, ECF No. 86.  The issue of derivative standing is not presently before the Court.  To the extent creditors seek an order granting them authority to pursue the Successor Liability Claims derivatively, an appropriate motion should be filed.

**IV.      Conclusion**

For the foregoing reasons, the Court concludes that the Successor Liability Claims—as that term is defined in the Complaint—are property of the estate under § 541(a)(1) and § 541(a)(7) - by virtue of §544(a)(1).  Accordingly, Debtors are entitled to summary judgment on Counts I and IV of the Complaint.  Debtors are directed to submit a proposed form of order consistent with this Court's ruling.


Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: August 13, 2024